## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL ALLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC. and NAVISTONE, INC.,<br><br>Defendants. | Civil Action No.: 2:17-cv-12352-ES-MAH<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Allen ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF THE CASE

1.      This is a class action suit brought against Defendants Quicken Loans Inc. ("Quicken") and NaviStone, Inc. ("NaviStone") (collectively, "Defendants") for wiretapping the computers of visitors to Defendant Quicken's website, Quickenloans.com.  The wiretaps, which are secretly embedded in the computer code on Quickenloans.com, are used by Defendants to scan the user's computer in search of files that can be used to de-anonymize and identify the user, and also to observe visitors' keystrokes, mouse clicks and other electronic communications in real time for the purpose of gathering Personally Identifiable Information ("PII") to de-anonymize those visitors – that is, to match previously unidentifiable website visitors to obtain their names and home addresses, along with detailed data concerning their browsing

habits.  These wiretaps enable Defendants to immediately, automatically, and secretly observe the keystrokes, mouse clicks, and other electronic communications of visitors regardless of whether the visitor ultimately procures financial services from Quicken.  By doing so, Defendants have breached Quicken's privacy policy, have violated Title I of the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-22, also known as the "Wiretap Act," which prohibits the intentional interception of wire, oral, and electronic communications unless specifically authorized by a court order, have violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, which prohibits unauthorized access to wire or electronic communications while it is in electronic storage, have violated New Jersey's privacy torts, and have committed other tortious acts as described herein.

2.      On several occasions within 6 months prior to the filing of this lawsuit, Plaintiff Michael Allen visited Quickenloans.com, but has never procured financial services from Quicken as a result of these visits.  During each of Plaintiff's visits Defendants scanned his device for files that could be used to de-anonymize and identify him, and captured his electronic communications, disclosed the intercepted data to NaviStone in real time, and used the intercepted data to attempt to learn his identity, postal address, and other PII.

3.      Plaintiff brings this action on behalf of himself and a class of all persons whose electronic communications were intercepted through the use of NaviStone's wiretap on Quickenloans.com.

## PARTIES

4.      Plaintiff Michael Allen is a natural person and citizen of the State of New Jersey who resides in Paramus, New Jersey.  Several times over the last six months, Mr. Allen browsed Defendant Quicken's website at Quickenloans.com.  Although Mr. Allen never procured financial services from Defendants as a result of these visits and never consented to any

2

interception, disclosure or use of his electronic communications, Mr. Allen's keystrokes, mouse clicks, and other electronic communications were intercepted in real time and were disclosed to NaviStone through Quicken's use of NaviStone's wiretap.  Mr. Allen was unaware at the time that his keystrokes, mouse clicks, and other electronic communications were being intercepted and disclosed to a third party.

5.     Defendant Quicken Loans Inc. is a Michigan corporation with its principal place of business at 1050 Woodward Ave., Detroit, Michigan.  Quicken does business throughout New Jersey and the entire United States.

6.     Defendant NaviStone, Inc. is a Delaware corporation with its principal place of business at 1308 Race Street, Cincinnati, Ohio 45202.  NaviStone does business throughout New Jersey and the entire United States.  NaviStone is an online marketing company and data broker that deals in U.S. consumer data.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to the federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.* and the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*

8.     The jurisdiction of this Court is predicated on 28 U.S.C. § 1331.

9.     Both Defendants transact business in this District.  Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants do substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

10.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New Jersey, such that Defendants have significant, continuous, and pervasive contacts with the State of New Jersey.  Moreover, a substantial part of the events

giving rise to Plaintiff's claims took place within New Jersey.  Furthermore, Plaintiff resides in this District and is a citizen of the state of New Jersey.

## FACTS COMMON TO ALL CLAIMS

### Overview Of NaviStone's Wiretaps

11.     Defendant NaviStone is a marketing company and data broker that deals in U.S. consumer data.  NaviStone's business model involves entering into voluntary partnerships with various e-commerce websites.  Upon partnering with NaviStone, these e-commerce websites will agree to insert a small parcel of computer code into their websites, which is provided by NaviStone (and is written by NaviStone).  This small parcel of computer code serves as a so-called "back door" in computer terminology – its function is to retrieve and execute a much larger portion of JavaScript code that is remotely hosted on NaviStone's servers.  As NaviStone explains on http://navistone.com, "[a]dding a simple line of code to each page of your website enables a wealth of new marketing data."

12.     This "back door" code permits NaviStone to execute its own computer code on the websites of its e-commerce partners.  Stated otherwise, the "simple line of code" that NaviStone requests its partners add "to each page of [their] website[s]" serves to call and execute remote computer code that is:  (i) provided by NaviStone, (ii) written by NaviStone, and (iii) hosted on a remote server by NaviStone.

13.     As currently deployed, NaviStone's remote code functions as a wiretap.  That is, when connecting to a website that runs this remote code from NaviStone, a visitor's IP address and other PII is sent to NaviStone in real-time.  NaviStone's code also scans the visitor's computer for data files that could reveal the visitor's identity.  NaviStone's code will also spy on the visitor as he or she browses the website, instantaneously reporting the visitor's every

4

keystroke and mouse click to NaviStone.  This real-time interception and transmission of visitors' electronic communications begins as soon as the visitor loads Quickenloans.com into their web browser.  Every keystroke and mouse click is instantaneously intercepted and transmitted to NaviStone through the wiretap.  This real-time transmission includes, among other things, information typed on forms located on Quickenloans.com, such as its mortgage estimator, regardless of whether the user completes the form or clicks "Submit."  Upon transmission to NaviStone, this information is used to de-anonymize website visitors.

14.     NaviStone maintains a back-end database containing data and profiles on consumers across the U.S., which includes consumers' names and mailing addresses.  As users browse the various e-commerce websites that deploy NaviStone code, NaviStone attempts to "match" website visitors with records of real-life people maintained in its back-end database.  This matching may occur as simply as running a database query to correlate the IP address of a website visitor, though NaviStone may also attempt to match user profiles through the use of names, addresses, and other PII.  Once a match is found, NaviStone de-anonymizes the user and updates its back-end database with the user's current browsing activities and PII.

15.     NaviStone has partnered with hundreds e-commerce websites since beginning its operations.  By combining and correlating its data, NaviStone can watch consumers as they browse hundreds of participating e-commerce sites, in real-time.

16.     Pursuant to an agreement with NaviStone, Quicken intentionally embedded NaviStone's software coded wiretap on Quickenloans.com in order to scan visitors' computers for files that could be used to identify them, and also to intercept visitors' communications to obtain de-anonymized PII of visitors to Quicken's website.

17.     NaviStone obfuscates the wiretap codes through dummy domains to attempt to

5

conceal its activities.  For example, part of NaviStone's remote code running on Quicken's website is located at http://code.murdoog.com/onetag/C196978CF1900B.js (as of the writing of this Complaint).

18.     On June 20, 2017, a leading tech news website, gizmodo.com, published an exposé on NaviStone's wiretaps entitled "Before You Hit 'Submit,' This Company Has Already Logged Your Personal Data."[1]  The Gizmodo article describes NaviStone as "a company that advertises its ability to unmask anonymous website visitors and figure out their home addresses."[2]  The article revealed that NaviStone is "in the business of identifying 'ready to engage' customers and matching 'previously anonymous website visitors to postal names and addresses.'  [NaviStone] says it can send postcards to the homes of anonymous website shoppers within a day or two of their visit, and that it's capable of matching '60-70% of your anonymous site traffic to Postal names and addresses.'"[3]

19.     Indeed, on its own website, NaviStone boasts that it "invented progressive website visitor tracking technology," which allows it to "reach [] previously unidentifiable website visitors."[4]  According to NaviStone, "[b]y simply adding one line of code to each website page, you can unlock a new universe of 'ready to engage' customers."[5]

20.     NaviStone also explains how to implement this software wiretap on its clients' webpages:

> 1:     Insert One Line Of Code On Each Webpage.
> We'll provide you and your IT team with a short tracking code (and instructions) to insert on *each page* of your website.  Data collection begins immediately and is

---

[1] https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081
[2] *Id.*
[3] *Id.*
[4] https://www.navistone.com/
[5] *Id.*

reviewed for quality by our staff.

2:    Identify Engaged Website Visitors.
Data is stored in a secure environment specifically dedicated to your company's information.  Website visitors are identified as direct marketing prospects or reactivation targets based on their level of engagement on your site, as identified by unique algorithms developed by our data scientists.

3:    Identify Verified Names and Addresses.
When unidentified website visitors show an intent to purchased based on the modeling process described above, NaviStone® will secure postal names and addresses to include in your direct marketing prospecting and reactivation programs.  …

4:    Use, Expand, Repeat.
NaviStone® will continue to track website behavior to identify new, unique prospects and reactivation targets so you can expand and optimize this unique process for success time and time again.[6]

21.    NaviStone's wiretap intercepts communications in real time.  As *Gizmodo* put it, "before you hit 'submit,' this company has already logged your personal data."[7] *Consumerist* also shared the same concern: "these forms collect your data even if you don't hit 'submit.'"[8]

22.    NaviStone's wiretap is engaged as soon as the visitor arrives at Quickenloans.com.  By merely loading the main page on Quickenloans.com, with no other action, the visitor is connected to NaviStone's wiretap, which scans visitors' computers for identifying information, and also intercepts and monitors their communications.

23.    As the visitor interacts with Quickenloans.com, for example, by typing information into a form (*e.g.*, the balance of his or her mortgage, the total value of his or her

---

[6] https://www.navistone.com/how-it-works (last visited Nov. 3, 2017).
[7] https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081 (last visited Nov. 3, 2017).
[8] https://consumerist.com/2017/06/29/these-forms-collect-your-data-even-if-you-dont-hit-submit/

home, etc.), all of these communications are intercepted and disclosed to NaviStone in real time, through the wiretap.  Indeed, as will be demonstrated below, when NaviStone's code is deployed on a webpage that contains an online form – such as a "sign up" page or an "account registration" page – the data is sent to NaviStone as it is typed.  Visitors do not need to click "Submit" on the form, or take any other action, for their communications to be intercepted and disclosed to NaviStone.

24.     NaviStone's wiretaps are deployed on hundreds of e-commerce websites.  Upon information and belief, NaviStone maintains and correlates its back-end database of User Data and PII across these hundreds of websites.  For example, assume that Site X and Site Y are both running NaviStone's wiretap.  Now, assume that a user provides her name and phone number to Site X, but _not_ to Site Y.  Through the use of NaviStone's wiretap and back-end database, NaviStone can de-anonymize the user on Site Y and know her name and phone number, even though she never provided that information to Site Y.

**NaviStone's Wiretap In Action On Quickenloans.com**

25.     Some aspects of the operation of NaviStone's wiretap on the Quickenloans.com website can be observed using the Developer Tools Window in the Google Chrome browser.  In the images below, the Quickenloans.com website, as it appears normally through the browser is shown in the left-hand side of the window, while the Developer Tools Network View, showing incoming and outgoing transmissions, is shown in the right-hand window.

26.      When Quickenloans.com is loaded into a browser, the website automatically retrieves a computer file located on a remote server.  At the time this Complaint was written, the computer file was named "C196978CF1900B.js," and it was hosted at http://code.murdoog.com/onetag/



27.     The file "C196978CF1900B.js" is roughly 24 KB in size and contains computer

code written in a language called JavaScript.  It appears as such:



The top line of the code contains a comment indicating that it is to be used on

"Quickenloans.com."  However, the remainder of the code lacks comments, explanations, proper

indenting, or intelligible names for variables.  Essentially, this code is obfuscated.

28.     The domain "code.murdoog.com," which deploys this code, is owned and

operated by NaviStone.

29.     Next, the code in C196978CF1900B.js is executed, with no further actions by the

user, or prompting by Quicken or NaviStone.  This immediately begins intercepting the visitors'

electronic communications and transmitting them to https://apis.murdoog.com/



30. The domain "apis.murdoog.com" is also owned and operated by NaviStone.

31. The intercepted communications are encoded in a format called Base64. When decoded, they appear as such:

{"v":"e609394e-f9d3-4c7e-a85b-d1c3d6c77be8","m":"7c213bd9-2744-45c4-a38e-e1184f1b3f11","csi":2602349387,"se":"108f0375-a71a-401c-9039-d747ba53c1bf","p":"0a487a7f-bd29-4b2c-9b3e-365b46b1f5dc","u":"https://www.quickenloans.com/mortgage-application/four-steps?mortgage-option=yourgage#1","pn":"/mortgage-application/four-steps","t":"Apply for a Mortgage | Quicken Loans","c":"https://www.quickenloans.com/mortgage-application/four-steps","pr":"CD4143","eid":"ns_seg_100","s":1,"vs":11,"l":"PageLoad"}

Based on information and belief, other portions of these intercepted data (which are obfuscated such that they are machine-readable but are not readable by humans) include a timestamp, an ID

number, the user's IP address, and other PII.

32.     NaviStone's wiretaps scan the visitor's computer for files that can be used to de-anonymize and identify the user.  On information and belief, the wiretap searches for tracking files employed by other websites or online data brokers to de-anonymize and identify the user.

33.     NaviStone's wiretap will also monitor the user as he or she browses Quickenloans.com.  The wiretaps will report every page visited by the user.  Assume that a visitor is interested in applying for a mortgage.



This activity is immediately communicated to NaviStone as such:

{"v":"e609394e-f9d3-4c7e-a85b-d1c3d6c77be8","m":"7c213bd9-2744-45c4-a38e-e1184f1b3f11","csi":2775439104,"se":"108f0375-a71a-401c-9039-d747ba53c1bf","p":"4660d48a-6831-4ce3-9162-eeb436f72b04","u":"https://www.quickenloans.com/mortgage-application/four-steps?mortgage-option=yourage#2","pn":"/mortgage-application/four-steps","t":"Apply for a Mortgage | Quicken Loans","c":"https://www.quickenloans.com/mortgage-application/four-

steps","pr":"CD4143","eid":"ns_seg_100","s":1,"vs":12,"l":"PageL oad"}

34.     When filling out forms, any PII the user provides is immediately, automatically, and secretly transmitted to NaviStone in real-time.  Here, by way of example, the user has indicated that he or she has "Signed a Purchase Agreement."  A transmission is automatically, immediately, and secretly made to NaviStone:



Now, the user has indicated that he or she is a "first-time home buyer."  Again, a transmission is automatically, immediately, and secretly made to NaviStone:



Now, the user has indicated that he or she is currently renting.  Again, another transmission is automatically, immediately, and secretly made to NaviStone:



35.    Furthermore, after visitors enter their "mortgage balance" on Quickenloans.com, another transmission is automatically, immediately, and secretly made to NaviStone:



Similarly, when visitors enter their total "home worth" on Quickenloans.com, another transmission is automatically, immediately, and secretly made to NaviStone:



36.     By intercepting these communications, NaviStone is able to learn the identity of the visitor.  As NaviStone boasts, it is capable of matching "60-70% of your anonymous site traffic to Postal names and addresses."[9]

**Defendants Violated Quicken's Privacy Policy**

37.     Quicken's website maintains a Security and Privacy Policy (hereafter, the "Privacy Policy").  As enacted during all relevant time periods, the Privacy Policy states that Quicken "respect[s] and protect[s] the privacy of those who visit or use our website," and "[w]hen [Quicken] collect[s] information from you, we want you to know how it is used."  The Privacy Policy further states that: "By using [Quicken's] website, you are consenting to the use

---

[9] *Id.*

of information and agreeing to these guidelines and the other Quicken Loans policies described on [Quicken's] website."

38.     In a section entitled "**OUR SECURITY & PRIVACY PLEDGE**," Quicken's Privacy Policy promises that "Quicken Loans does not share your personal information with outside companies for their promotional use without your consent."

39.     In a section entitled "**PROTECTING YOUR IDENTITY AND CREDIT**," Quciken states that:

> **Tools, Applications and Registration:**  We provide a number of ways for you to explore your options for mortgages and loans, so you can determine which options may be the most desirable for you.  You can engage a number of tools, planners, calculators and other interactive advisors, such as the online interviews, without providing us your identity.  We will not ask you for personally identifiable information to use these features, and do not attribute the information that you provide to you as an individual.
>
> However, if you want to exercise one or more of the loan options presented, we will ask you to register at the site and supply other identifying and supporting information needed to process your application.
>
> By registering, you can save information such as loan interviews and applications for later review and update.  When you register, you select a member ID name by which we will know you, choose a password and provide us an Email address.  You use the member ID name and password to gain access to your loan application information, financial profile and/or customized rates.  We use your contact information to provide you with alerts and updates regarding your loan status, which is part of the Quicken Loans service.  <u>Quicken Loans does not share your information with outside companies for their promotional use.</u>  We may, however, use it to send you communications and special offers on other products or services offered by Quicken Loans.  If you do not want to receive this information you may opt-out during registration, within any future communications or by sending an Email to optout@QuickenLoans.com.  You may also click here to change your contact preferences.  (underlining added)

40.     In a section entitled "**WE TELL YOU HOW AND WHY WE USE WEB**

**TECHNOLOGIES**," Quicken states that:

> **Website Usage Data:** Our website tracks usage data, including,
> for example, your IP address, your browser type and version,
> which pages you view, which page, if any, linked you to our site,
> and which link, if any, you follow off of our site.  We use this data
> in the aggregate and on an individual level to better understand
> website activity to improve our site offerings, to reconstruct
> activity from a session or by a user, for troubleshooting and issue
> resolution purposes.  We may also use this data to provide you a
> more personalized website experience, assistance with technical
> support questions, and to send you special offers, product and
> service updates, or other promotional materials that are relevant
> and tailored to your interests.  If you do not want to receive these
> offers or promotions, simply indicate your contact preferences
> during the registration process, within any future communications
> or by sending an Email to optout@QuickenLoans.com.  You may
> also click here to change your contact preferences. <u>We do not share
> your information with outside companies for their promotional use.
> We do not track URLs that you type into your browser, nor do we
> track you across the Internet once you leave our site.</u>  (underlining
> added)

41.     Each of these statements are false and/or misleading because Quicken does in fact

share visitor's information with NaviStone for NaviStone's marketing purposes and promotional

use.  And NaviStone then shares the information with other third parties for their marketing

purposes and promotional use.

**Other Allegations Common To All Claims**

42.     Defendants, as corporations, are "persons" pursuant to 18 U.S.C. § 2510(6).

43.     Plaintiff's and Class Members' keystrokes, mouse clicks, and other interactions

with Quickenloans.com are "electronic communications" as defined by 18 U.S.C. § 2510(12).

44.     For at least some of the communications at issue, neither Quicken nor NaviStone

was an intended recipient of the communication.  For example, Mr. Allen has never procured

financial services from Defendants as a result of his visits to Quickenloans.com in the last 6

months.  Thus any datafiles retrieved from his device, or any information he may have typed

onto forms without clicking submit, or any keystrokes, mouse clicks, or similar communications with Quickenloans.com, were communications with Mr. Allen's Internet service provider for the purpose of accessing web content, and were not communications with Quicken or NaviStone. They were not communications to which Quicken or NaviStone were intended to be parties.

45.     At the time Defendants implemented the wiretaps on Quickenloans.com, they intended to commit tortious acts including disclosures of the intercepted information which violated Quicken's Privacy Policy, violated the SCA, violated the confidentiality provisions of the Gramm-Leach-Bliley Act, and several New Jersey privacy torts.

46.     Throughout the entirety of the conduct upon which this suit is based, Defendants' actions have affected interstate commerce.

47.     Defendants' actions are and have been intentional as evidenced by, *inter alia*, their design and implementation of the software wiretap on Quickenloans.com, their use of wiretaps to access files on visitors' computers that are unrelated to the Quickenloans.com website, and their disclosures and uses of the intercepted data files and communications for profit.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff seeks to represent a class all persons whose electronic or stored communications were intercepted through the use of NaviStone's wiretap on Quickenloans.com (the "Class").  Plaintiff also seeks to represent a subclass of all Class members residing in the state of New Jersey (the "New Jersey Subclass").

49.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but

may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

50.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants intentionally intercepted electronic communications in violation of 18 U.S.C. § 2511(1)(a); whether Defendants intentionally disclosed the intercepted electronic communications in violation of 18 U.S.C. § 2511(1)(c); whether Defendants intentionally used, or endeavored to use the intercepted electronic communications to de-anonymize website visitors in violation of 18 U.S.C. § 2511(1)(d); whether Quicken procured NaviStone to intercept or endeavor to intercept electronic communications in violation of 18 U.S.C. § 2511(1)(a); whether NaviStone procured Quicken to intercept or endeavor to intercept electronic communications in violation of 18 U.S.C. § 2511(1)(a); whether NaviStone's wiretaps, including the software codes described herein, are an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5); whether NaviStone's wiretaps are primarily useful for the purpose of the surreptitious interception of electronic communications in violation of 18 U.S.C. § 2512; whether NaviStone violated 18 U.S.C. § 2512 by intentionally creating the wiretap codes, by possessing those wiretaps, by advertising them on the NaviStone website, and by distributing them to Quicken for installation on Quicken's website; whether Quicken violated 18 U.S.C. § 2512 by receiving the wiretaps from NaviStone, which were transported through interstate commerce, by possessing those wiretaps, and by further distributing them through the software codes embedded on Quickenloans.com; whether each class member is entitled to the remedies specified under 18 U.S.C. § 2520, including but not limited to statutory damages of $10,000 per class member;

whether Defendants violated the SCA, 18 U.S.C. § 2701, by unlawfully accessing files stored on the computers and devices of visitors to Quickenloans.com; and whether Defendants engaged in tortious deceptive acts or practices under New Jersey common law by intercepting and disclosing information obtained through the wiretaps in violation of the Privacy Policy.

51.     The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited Quickenloans.com and had his electronic communications intercepted and disclosed to NaviStone through the use of NaviStone's wiretap.

52.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

53.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

54.     Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendants.

## Count I
**For Interception Of Electronic Communications In Violation Of The Wiretap Act, 18 U.S.C. § 2511(1)(a)**

55.     Plaintiff repeats the allegations contained in ¶¶ 1-54, above, as if fully set forth herein.

56.     By implementing NaviStone's wiretaps on Quickenloans.com, each Defendant intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiff and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

## Count II
**For Disclosure Of Intercepted Electronic Communications In Violation Of The Wiretap Act, 18 U.S.C. § 2511(1)(c)**

57.     Plaintiff repeats the allegations contained in ¶¶ 1-54, above, as if fully set forth herein.

58.     By intentionally disclosing the intercepted electronic communications of the Plaintiff and Class Members to each other, and to other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants have violated 18 U.S.C. § 2511(1)(c).

## Count III
**For Use Of Intercepted Electronic Communications In Violation Of The Wiretap Act, 18 U.S.C. § 2511(1)(d)**

59.     Plaintiff repeats the allegations contained in ¶¶ 1-54, above, as if fully set forth

herein.

60.     By intentionally using, or endeavoring to use, the contents of the Plaintiff's and Class Members' intercepted electronic communications to de-anonymize them, and for other purposes, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants have violated 18 U.S.C. § 2511(1)(d).

**Count IV**
**For Procuring In Violation Of The Wiretap Act, 18 U.S.C. § 2511(1)(a)**

61.     Plaintiff repeats the allegations contained in ¶¶ 1-54, above, as if fully set forth herein.

62.     By intentionally procuring NaviStone to intercept or endeavor to intercept electronic communications, Quicken violated 18 U.S.C. § 2511(1)(a).

63.     By intentionally procuring Quicken to intercept or endeavor to intercept electronic communications, NaviStone violated 18 U.S.C. § 2511(1)(a).

**Count V**
**For Manufacture, Distribution, Possession And Advertising Of Electronic Communication Intercepting Devices In Violation Of The Wiretap Act, 18 U.S.C. § 2512**

64.     Plaintiff repeats the allegations contained in ¶¶ 1-54, above, as if fully set forth herein.

65.     NaviStone's wiretaps, including the software codes described herein, are an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5), are primarily useful for the purpose of the surreptitious interception of electronic communications.

66.     By intentionally creating the wiretap codes, by possessing those wiretaps, by advertising them on the NaviStone website, and by distributing them to Quicken for installation

on Quicken's website, NaviStone violated 18 U.S.C. § 2512.

67.     By receiving the wiretaps from NaviStone, which were transported through interstate commerce, by possessing those wiretaps, and by further distributing them through the software codes embedded on Quickenloans.com, Quicken violated 18 U.S.C. § 2512.

**Count VI**
**For Violation Of The Stored Communications Act, 18 U.S.C. §§ 2701, *et seq*,**

68.     Plaintiff repeats the allegations contained in ¶¶ 1-54, above, as if fully set forth herein.

69.     Plaintiff's and Class members' computers and devices are facilities through which an electronic communications service is provided.

70.     Through use of the wiretaps described herein, Defendants intentionally accessed stored files on Plaintiff's and Class members' computers and devices without authorization or by exceeding an authorization given, in violation of 18 U.S.C. § 2701.

**Count VII**
**For Intrusion Upon Seclusion**

71.     Plaintiff repeats the allegations contained in ¶¶ 1-54, above, as if fully set forth herein.

72.     By the acts and conduct alleged herein, Defendants intentionally intruded upon the Plaintiff's solitude or seclusion in that Defendants intentionally accessed stored files on Plaintiff's and Class members' computers and devices without authorization or by exceeding an authorization given.  Further, by implementing NaviStone's wiretaps on Quickenloans.com, each Defendant intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members.

73.     Defendants' intentional intrusion on Plaintiff's solitude or seclusion is highly offensive to a reasonable person in that Defendants' conduct violated federal and state civil and

25

criminal statutes designed to protect individual privacy.  Specifically, Defendants' conduct violated the Wiretap Act, the SCA, and the confidentiality provisions of the Gramm-Leach-Bliley Act, as well as the terms of Quicken's own Privacy Policy.

74.     As a result of the above, the Defendants are liable to Plaintiff, the Class, and the New Jersey Subclass for general damages to their interest in privacy resulting from the invasions, as well as for compensatory and punitive damages.

## **Relief Sought**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendants as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order declaring that Defendants' conduct as described herein violates the statutes referenced herein;

C.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.     For all remedies specified in the Wiretap Act, 18 U.S.C. § 2520, including the actual damages suffered by the plaintiff and class members, any profits made by Defendants as a result of the violations, statutory damages of whichever is greater of $100 a day for each day of violation or $10,000 for each class member, such preliminary and other equitable or declaratory relief as may be appropriate, punitive damages, and a reasonable attorney's fee and other litigation costs reasonably incurred;

E.     For all remedies specified in the Stored Communications Act, 18 U.S.C. §§ 2707(b) and (c), including the actual damages suffered by the plaintiff and class memberss, any profits made by Defendants as a result of the violations, statutory damages of $1,000 per class member, such preliminary and other equitable or declaratory relief as may be appropriate, punitive damages, and a reasonable attorney's fee and other litigation costs reasonably incurred;

F.     For all remedies specified under New Jersey's privacy torts;

G.     For prejudgment interest on all amounts awarded;

H.   For an order of restitution and all other forms of equitable monetary relief;

I.   For injunctive relief as pleaded or as the Court may deem proper;

J.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

K.   Grant any and all such relief as the Court deems appropriate.

## **Jury Demand**

75.   Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  February 9, 2018                Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     */s/ Frederick J. Klorczyk III*
            Frederick J. Klorczyk III

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
Email:  fklorczyk@bursor.com

*Attorneys for Plaintiff*

27